[Filed May 11, 1885.]

## ANTHONY MOORE v. LEVI KNOTT AND LEVI ESTES.

PARTNERSHIP.—Where articles of partnership provide that in case of a sale of the partnership property at any time before the expiration of the partnership, the proceeds of the sale shall be divided equally between the partners, one of the partners cannot be deprived of his right to such a distribution without his consent.

MULTNOMAH COUNTY. Anthony Moore and Levi Estes each appeal. Decree modified in accordance with opinion.

*George H. Williams,* for Respondent Anthony Moore.

*Alfred F. Sears, Jr.,* and *R. Williams,* for Appellant.

*H. T. Bingham,* for Respondent Knott.

THAYER, J.—This appeal is from a decree of the Circuit Court for Multnomah County. The respondent Moore commenced a suit against the respondent Knott and the appellant

Estes in that court, for an accounting arising out of partnership affairs between the parties. It appears from the transcript that said parties, on the 15th day of April, 1882, entered into written articles of copartnership in the steam saw-mill business for the purpose of manufacturing and selling lumber. The partnership was to continue for the period of ten years from the 1st day of March, 1882, and be binding upon the legal representatives. The saw-mill was to be erected on the premises known as the "Nicolai Mill," at Albina, in said county, and Knott and Estes were to allow the firm the use and occupation of the premises under lease, which the articles stated were then held by said Knott from Nicolai. Said Knott and Estes were to pay all rent and other taxes and expenses agreed to be paid by the lessee under said lease without charge to the firm ; the partnership to pay the taxes against the mill and machinery. Said Knott and Estes were also, at their own cost and expense, to make an addition of eighteen or twenty feet to the east end of the mill building for the edger. Moore agreed, at his own cost and expense, to take down the mill then standing on the McNulty Creek, back of St. Helen's, in Columbia County, Oregon, and at his own cost and expense to move the boiler, engines, and all the other machinery pertaining to said mill, and also the black-smith tools and appliances, to said Nicolai mill premises, and there erect the same at his own cost and expense, and put said engine and machinery, and the blacksmith shop, in good running order; but that if, at any time during the continuance of the said partnership, it should be deemed expedient by all the partners, or their representatives, to make additions to said mill building, or to purchase and operate other additional machinery therein, such addition should be built and such additional machinery be purchased at the joint cost of all the partners, each to pay ratably his proportion of one third thereof. Said articles also contained the following clause, viz.: —

"In case of a sale of the mill and lease at any time before the expiration of the time to which the partnership is limited, the proceeds of such sale shall be divided equally between the partners ; but if the said mill and lease is not disposed of during

said partnership, then at the end of ten years Anthony Moore shall have and then retain all the machinery, engines, boilers, etc., put into the mill by him; and such additional machinery as may have been purchased and put into the mill shall be sold, and the proceeds of the sale shall be divided equally between the partners."

It was further stipulated therein that in case of the destruction of the mill by fire the partnership should at once terminate, and the said Knott and Estes should become again solely entitled to the benefits of the lease for the remainder of the term.　There are also many other provisions in said written articles, but it is not necessary to refer to them for the purposes of this decision. The said parties, after concluding the said articles of copartnership, engaged in the business therein mentioned, and prosecuted it until March 13, 1883, when the partnership was dissolved. That the said Moore, in pursuance of the said articles, took down his said mill, and at his own cost and expense moved the said boiler, engines, and other machinery to said Nicolai Mill premises, and put the same in good running order.　That on or about the said 13th day of March, 1883, said parties sold the said mill and machinery for the sum of $16,000.　It was claimed by said Moore that said sum was received by the said Knott, and the further sum of $1,418.25 on account of the sale of certain wood and lumber belonging to the said firm, and also that prior to and at the time of the sale of said mill it was agreed by the said Knott, with the knowledge and consent of said Estes, to pay him from said proceeds of said sale the sum of $6,400 on account of his said boiler, engine, and the other machinery so furnished by him and erected in the said mill; and it was claimed by the said Estes that by an arrangement made between him and Knott, soon after the formation of the partnership, he acquired the interest of Knott therein, and that he was, at the time of the dissolution of the firm, the owner of a two-thirds interest in the said business, subject to debts and liabilities in favor of Knott.　He claimed, also, that there had been an account stated between the parties, and a balance struck, by which there was found due to said Moore $1,660.72, to said Knott $6,424.30, and to himself $5,012.44.

Several other issues were involved in the case between the parties, which it is unnecessary to notice. The suit was referred to a referee to find the facts and conclusions of law, and upon whose report the decree appealed from was entered. The following are the findings of fact and law reported by the referee, viz.: —

"*First.* That on or about the 15th day of April, 1882, the plaintiff and the defendants entered into an agreement of copartnership in the saw-mill business at Albina, Oregon, for a period of ten years from March 1, 1882, under articles of copartnership as stated in the plaintiff's complaint, herein. *Second.* That prior to the formation of said partnership, the plaintiff, together with others, was owner of certain mill machinery then situate in Columbia County, Oregon. *Third.* That under and by the terms of said copartnership agreement, the said plaintiff removed said machinery from said Columbia County to the mill of said parties at Albina, Oregon, and performed work and labor in placing the same in said mill, all of which was of the value of about $6,100. *Fourth.* That said partnership business was unsuccessful, and on or about the 13th day of March, 1883, it was mutually agreed by and between all of said partners to discontinue said business, and sell out all of said partnership property, if a purchaser could be found at a price which would repay to said Levi Knott his advances made to said firm, with interest thereon, and repay to said plaintiff the cost of the machinery placed by him in said mill, together with the work done by him in so constructing and placing the same. *Fifth.* That on or about said date an offer of $16,000 was made for said mill property by J. S. Cochran, and it was thereupon mutally agreed, by and between said partners, to accept said offer, and sell said property at said price, and apply the proceeds in the manner so agreed upon. *Sixth.* That in consideration of said agreement, the said copartners did, upon the —— day of March, 1883, sell and convey to said Cochran the said mill property for said sum, and also, at or soon after said date, sold all lumber and wood belonging to said firm for the sum of $1,418.25. *Seventh.* That up to the

time of said sale the said Levi Knott had made advances of money to said firm in the amount of $6,165, over and above all assets; and there was due and owing to him from said firm the said sum of $6,165. *Eighth.* That at said date the said plaintiff was owing the firm a balance of $1,103.84; and the cost of mill machinery furnished by him, and his work, was $6,100. *Ninth.* That at the same date the said Estes was indebted to the firm in the sum of $855.64 over and above all credits. *Tenth.* That since said sale said Knott has received of the proceeds of the same, and the sale of lumber and wood, the sum of $16,323.67, and has paid debts of the firm amounting to $5,964.55, leaving in his hands the sum of $5,493.86, over and above all his expenditures and claims against said firm. *Eleventh.* That since said sale the said Anthony Moore has received of the proceeds thereof the sum of $1,094.58, leaving the amount due him the sum of $3,901.58. *Twelfth.* That since said sale said Estes has collected of amounts due to said firm the sum of $361.25, and has paid of the firm debts $1,594, leaving the amount of his debt to the firm at $1,200.82. *Thirteenth.* That the surplus on hand after payment of the respective claims of Knott and Moore, and after payment of all debts, save and except the costs of this suit, is $1,581.79. That as between defendants Estes and Knott there was no contract or agreement that the said Estes should have the said interest of Knott in the copartnership, and the said Knott retained his interest in said firm as a copartner under the articles of copartnership up to the time of the dissolution thereof."

As conclusions of law:—

"That the plaintiff is entitled to a decree, decreeing that the defendant Knott pay to the plaintiff the sum of $3,901.58, and the further amount of one half of what shall remain of said surplus of $1,581.79 after payment of the costs of suit out of the same, and that the plaintiff and said defendant Knott each have judgment against the defendant Estes for an amount equal to the one third of what shall remain after deducting one half of said surplus (after the payment of the costs thereout) from said amount of $1,200.82."

There is an evident error in the result found by the referee as to the amount of money in the hands of Knott at the date of his report. The amount of money Knott received was $16,000 for the mill, and $1,418.25 for wood and lumber. From this, Moore received $1,094.58. Knott then had remaining the $16,323.67 as recited in the tenth finding of fact. From this take the advances Knott had made up to the time of the sale—$6,165—and the $5,964.55 he had paid debts of the firm since the sale, amounting to $12,129.55, and it does not leave in his hands $5,493.86, but $4,194.70. Nor do we agree with the referee in his fourth and fifth findings of fact, so far as they find that it was mutually agreed between the said partners to sell out the partnership property and repay Moore the costs of the machinery placed by him in the mill, or to apply the proceeds of such sale to such purpose.

The evidence was sufficient to authorize the referee to find that Knott was willing that Moore should have all the proceeds of the sale of the partnership property after the debts of the firm were paid, but it nowhere appears that Estes consented to any such arrangement. The fact is that Moore and Knott ignored Estes in the transaction; but they had no right to do so, in view of their stipulation in their articles of copartnership hereinbefore set out. By that clause in the articles, Estes was entitled, in case of a sale before the expiration of the ten years, to an equal division of the proceeds thereof, and he certainly could not be deprived of it unless he had relinquished that right for a valid consideration. Moore's and Knott's agreement upon the subject could not bind Estes without his express assent. The stipulation conferred upon him a property right which he alone could dispose of. Knott was not his guardian or agent for the purpose of releasing the right he had secured under the contract of copartnership. Knott was willing to give to Moore his interest in the assets of the concern; and we think he did, according to the weight of the testimony, agree that the proceeds of the sale should, after the debts were paid, be applied upon Moore's claim; but Estes was unaffected by the arrangement.

It was claimed by Moore's counsel upon the argument that Estes had assigned his interest in the partnership to Knott. It appears that Estes did, on April 27, 1882, assign to Knott the lease of the premises from Nicolai to him, and that at the same time Knott agreed to reassign the same. The recital in the former agreement is to the effect that Estes was indebted to Knott for certain sums of money advanced, aggregating $500, and that Knott had agreed to make other advances for Estes, and that to secure the money advanced and to be advanced the assignment was made. This transaction could only operate as a mortgage of the leasehold interest Estes had in the premises, and had no effect upon his relations as a partner in the business. On the other hand, Estes claimed that the transaction was evidence that Knott owned no share in the concern, but that he (Estes) owned a two-thirds interest thereof. This view cannot be maintained any more than the other. The articles established the respective interests of each partner, and Estes can no more avoid their effect than Moore can. Each of the parties would have been entitled to a third interest in the assets of the firm had not the agreement between Knott and Moore been made, by which Moore was to have all the assets, including not only the portion the former would have been entitled to, but that which Estes was entitled to as well. That agreement bound Knott's portion of the assets, but not Estes' portion thereof. The claim of Estes that there had been an account stated is not supported by the proof.

The decision of this court is that, from the moneys in Knott's hands — the $4,194.70 — the costs and disbursements in the case, including that which was incurred in the Circuit Court and in this court, be paid; that the remainder be added to the sum of $2,198.42, the amount Moore owes the firm, and to the sum of $1,200.48, which Estes owes the firm, and one third of such total amount, less said $1,200.48, be paid to said Estes, and the other two thirds of such total amount, less the said sum of $2,198.42, be paid to the said Moore, and that upon such payment being made the said Knott be wholly exonerated from further liability on account of said moneys in his hands as afore-

said; that the decree of the Circuit Court be modified so as to conform to the principles of this decision.

Let a decree be entered herein in favor of the said Estes and the said Moore, respectively, and against the said Knott, for the respective amounts they are entitled to of the said moneys as herein determined, whenever the costs and disbursements are taxed, so that they can be ascertained.